IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT A. L.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 21-2023-JWL |
| KILOLO KIJAKAZI,[2] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for DIB on March 11, 2019. (R. 10, 196). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims "[t]he ALJ erred in assessing [P]laintiff's credibility and in determining his residual functional capacity [(RFC)]." (Pl. Br. 25) (bold omitted). He then argues the ALJ erroneously relied upon the vocational expert (VE) testimony based on the erroneous RFC. Id. at 38-41.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.   Discussion**

The court addresses the errors alleged in Plaintiff's Social Security Brief. In the section of his argument claiming error in the ALJ's assessment of his allegations of symptoms resulting from his impairments[3] and of his RFC, Plaintiff relates his background as an honorably discharged veteran of Operation Iraqi Freedom who has

---

[3] Plaintiff's Brief refers to this as "assessing plaintiff's credibility." (Pl. Br. 25). That is a term formerly used by ALJ's in evaluating a claimant's allegations of symptoms resulting from his impairments, has never been used in the applicable regulations, and has been formally disclaimed for use by the SSA. Soc. Sec. Ruling (SSR) 16-3p, 2017 WL 5180304, *2 (SSA Oct. 25, 2017).

been granted individual unemployability benefits by the Department of Veterans Affairs (VA) as a result of PostTraumatic Stress Disorder (PTSD) and other conditions connected to his military service. (Pl. Br. 25-26). He addresses the standards and regulations applicable to evaluating disability and a claimant's allegations of symptoms. Id. at 26. Then, he relates the ALJ's RFC findings, his summary of Plaintiff's testimony of PTSD symptoms, and his reasons for discounting Plaintiff's allegations. Id. at 26-27.

For the next eight pages, Plaintiff takes issue with the ALJ's evaluation of the prior administrative medical findings[4] of the state agency psychological consultants and the medical opinion of the psychologist who examined Plaintiff at the request of the state agency. Id. at 28-35. Finally, Plaintiff provides his argument that the ALJ erred in evaluating his allegations of symptoms and explains his view of the ALJ's errors in this regard. Id. at 35-38.

### A.     **Evaluation of the Medical Opinions**

Plaintiff notes the opinions of the state agency psychologists, Dr. Cohen and Dr. McMaster, and of the psychologist who examined Plaintiff at the request of the state agency, Dr. Koeneman, and acknowledges the ALJ found their opinions partially persuasive and explained his reasons for doing so. (Pl. Br. 28, 32). He argues the record does not support the ALJ's reasons because it does not support his finding Plaintiff is

---

[4] "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review. 20 C.F.R. § 404.1513(a)(5). Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

"capable of 'frequent interaction with coworkers and supervisors as the record documents that the [plaintiff] is generally able to get along with familiar persons and even function well enough to take a Caribbean cruise—which involves close quarters with little opportunity to retreat.'" (Pl. Br. 28-29) (citing R. 17).  Plaintiff also argues the record does not support the ALJ's discounting Dr. Koeneman's opinion because, "[h]ow one behaves in a brief consultation or evaluation with a trained mental health professional can scarcely be equated with the ability to act appropriately in a work setting, eight hours a day, five days a week," id. at 33, and "[i]t is incorrect to assert that the record does not document intrusive thoughts, excessive anger outbursts, irritability, paranoia, distrust, or other symptoms," because the VA found Plaintiff has a 70% disability rating for PTSD and the VA Schedule of Ratings for Mental Disorders demonstrates such a rating requires particular conditions:

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or worklike setting); inability to establish or maintain effective relationships.

Id. at 33-34 (quoting without citation 38 C.F.R. § 4.130 (2020) (Schedule of ratings - Mental disorders))

Plaintiff explains how, in his view, the record supports finding the opinions of Drs. Cohen, McMaster, and Koeneman persuasive.  Id. at 29-35.

6

### *1.     Standard for Evaluating Evidence*

Effective March 27, 2017, the regulations changed.  In the new regulations, the Commissioner found that certain evidence—including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner—"is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 404.1513 (2017).  The regulations explain, "Objective medical evidence is medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1) (2017).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3) (2017).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 404.1513(a)(4) (2017).

The regulation defines "medical opinion" and "prior administrative medical finding:"

(2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …

>(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

>(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

\*\*\*

(5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

>(i) The existence and severity of your impairment(s);

>(ii) The existence and severity of your symptoms;

>(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

>(iv) Your residual functional capacity;

>    (v) Whether your impairment(s) meets the duration requirement; and
>
>    (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(2, 5) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). This regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). It provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate <u>how persuasive</u> the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2017). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1) (2017). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered

9

the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2) (2017). The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3) (2017). Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d) (2017).

### 2. *The ALJ's Findings*

The ALJ's RFC assessed Plaintiff with mental functional limitations only:

> He is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any, work place changes. He can have occasional interaction with public. He can have frequent interaction with co-workers and supervisors.

(R. 14) (finding No. 5, Bold omitted).

The ALJ summarized the opinion of the state agency psychological consultants:

> The state agency psychological consultants opined that the claimant can attend long enough to carry out 3 to 4 step tasks but may have some difficulty with work requiring sustained attention over long periods. The consultants opined that the claimant does have a history of interpersonal difficulties and would likely work best in a setting that did not involve working in close proximity to others as the claimant continually expresses a preference to not be around people or talk to people such that he does not appear able to interact appropriately with the public at any degree of contact and would he best with work not involving more than occasional interactions with coworkers and supervisors.

(R. 17).  He also summarized Dr. Koeneman's opinion:

> Dr. Koeneman opined that the claimant appears capable of following, carrying out, and remembering complex level instructions.  He appears capable of sustaining his attention on intermediate level tasks over a normal eight-hour workday.  Due to his ongoing anxious disturbances, claimant would likely experience significant psychological interference while working in a position that required frequent interactions with coworkers and the general public.  He may be able to function adequately in solo work tasks in a low contact work environment, but even this situation may result in psychological decompensation.  His persistence is also likely compromised due to his ongoing anxious disturbances.  He appears capable of managing his own funds.

Id.

The ALJ explained he found the state agency psychological consultants' opinion partially persuasive because they are "supported by a detailed narrative;" consistent with his moderate abnormalities in mental health functioning, "with the fact he has required some ongoing treatment, but no significant treatment modalities," and "with the fact that he can engage in numerous activities of daily living including caring for his children." (R. 17).  He went on to explain the reason he found the opinion only partially persuasive and that Plaintiff "could perform frequent interaction with coworkers and supervisors" was because he found Plaintiff "is generally able to get along with familiar persons and even function well enough to take a Caribbean cruise – which involves close quarters with little opportunity to retreat."  Id.  Similarly, he explained he found Dr. Koeneman's opinion partially persuasive because "it is supported by his examination that showed some but no significant deficits in [Plaintiff's] functioning," and "is consistent with the treatment notes from his providers that also showed few deficits in his functioning [and] is consistent with the fact he can engage in numerous activities of daily living, which

shows he can complete tasks and have social interaction." (R. 17-18). He found "the evidence of record does not support Dr. Koeneman's social restrictions," and explained:

> the record does not document intrusive thoughts, excessive anger outbursts, irritability, paranoia, distrust or other symptoms that would support such extensive restrictions in social functioning. Indeed, during DR. [sic] Koeneman's examination, the claimant was noted to be attentive and responsive with normal speech. The claimant was cooperative with no evidence of psychosis present. Similarly, recent examinations at the VA showed the claimant to be cooperative with good eye contact and normal speech and normal thoughts.

(R. 18).

### 3.     *Analysis*

The court finds no error in the ALJ's evaluation of the medical opinions. He explained the portions of the opinions he found persuasive and his reasons for doing so. He explained the portions he found unpersuasive and his reasons for doing so. His rationale was explicitly grounded in his consideration of the supportability and consistency of the opinions by and with the record evidence.

Plaintiff first argues the record shows he is unable to get along with even familiar persons. (Pl. Br. 29). The record evidence cited by Plaintiff in support of this argument consists of his testimony, his function report, and reports of his wife, all of which have little relevance to the persuasiveness of medical opinions. He also cites his reports to medical providers, all of which were made before his alleged onset of disability in this case, August 1, 2018. However, as the ALJ noted, Plaintiff's "providers have not documented significant <u>ongoing</u> deficits in his mental health functioning," and "[h]e was able to interact appropriately with his health care providers." (R. 16) (emphasis added).

12

Moreover, the ALJ relied on Plaintiff's going on a cruise which suggests close quarters and little opportunity to retreat. The record supports the facts relied upon by the ALJ, and although Plaintiff provides an alternative explanation of those facts, the question for the court is whether the evidence is such as a reasonable mind might accept to support the conclusion reached. It is.

Plaintiff does not cite record evidence to suggest the ALJ erred in evaluating Dr. Koeneman's, but argues, "How one behaves in a brief consultation or evaluation with a trained mental health professional can scarcely be equated with the ability to act appropriately in a work setting, eight hours a day, five days a week." (Pl. Br. 33). Plaintiff is correct that the two situations are not equal, but the fact there is no evidence of an inability to get along with any medical provider in the medical records is some evidence Plaintiff does not have great limitations in the area of interactions with others.

Plaintiff next argues the ALJ erred to find "the record does not document intrusive thoughts, excessive anger outbursts, irritability, paranoia, distrust, or other symptoms." Id. (citing R. 18). This is so, in Plaintiff's view, because Plaintiff is rated 70% disabled due to PTSD by the VA, and the VA defines this level of disability to include:

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

13

38 C.F.R. § 4.130, Schedule of Ratings—Mental Disorders (2020).

There are two problems with Plaintiff's reliance on this definition. First, this definition is in the regulation's "General Rating Formula for Mental Disorders," id. (emphasis added), says nothing about Plaintiff in particular, and Plaintiff does not cite to evidence in this record demonstrating specific deficiencies in specific areas mentioned in the definition and does not cite to evidence demonstrating specific functional limitations satisfying the decision. Plaintiff relies only on his reports of symptoms, and his wife's confirmation thereof. (Pl. Br. 24). Second, as the Commissioner points out, the agency has determined that decisions by other governmental agencies are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). The SSA has determined this is so because those decisions are made based on the rules of the other agency, are "not binding on us and is not our decision about whether you are disabled or blind under our rules." Id. § 404.1504.

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions in support of his claim of error in the ALJ's evaluation of his allegations of disabling symptoms. The court acknowledges this is a close question and that had it been evaluating the opinions in the first instance it may have reached a conclusion different than the ALJ in this case and closer to that argued by Plaintiff. However, that is not the applicable standard. The question is whether the ALJ's finding is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from

14

being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). The court finds the evidence supports the ALJ's decision and must, therefore, affirm that decision.

### B.  Evaluation of Plaintiff's Allegations of Symptoms

In discussing the ALJ's evaluation of his allegations of symptoms, Plaintiff points to record evidence of the history of his treatment, most of which occurred before his alleged onset of disability. (Pl. Br. 35-37). He then argues, "the ALJ downplayed the significant treatment plaintiff participated in for over three years to stabilize his severe PTSD symptoms," and wrongly stated plaintiff 'engaged in numerous activities of daily living' and that his description of daily activities was 'essentially normal.'" Id. at 38 (quoting R. 16). He argues the ALJ's findings are contradicted by his testimony, his reports to medical providers, and his function reports and ignore his wife's statements. Id.

The Commissioner argues the ALJ provided specific reasons—Plaintiff pursued only conservative treatment, numerous activities of daily living, and normal mental status examinations—that were supported by substantial evidence to discount Plaintiff's allegations of disabling symptoms. (Comm'r Br. 14). She cites record evidence supporting the ALJ's findings. Id. 14-15. She argues despite Plaintiff's allegation that the ALJ downplayed Plaintiff's three years of significant treatment, the relevant period

15

here began with Plaintiff's alleged onset date, August 2018, and during that period Plaintiff had one psychotherapy appointment and only six medication management appointments over the course of approximately two years. (Comm'r Br. 15). She argues the decision should be affirmed because the ALJ is in the best position to resolve conflicting evidence and provided valid reasons for doing so. Id.

### 1. *Standard for Evaluating a Claimant's Allegations of Symptoms*

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating such allegations: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's evaluation of a claimant's allegation of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

### 2. *The ALJ's Findings*

The ALJ noted that he applied the standard above as laid out in 20 C.F.R. § 404.1529 and SSR 16-3p. (R. 15). He summarized Plaintiff's allegations of symptoms and found those allegations "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. He stated his reasons for discounting Plaintiff's allegations: The "level of treatment" and "the mental status examinations in the record are not reflective of him having significant ongoing limitations." Id. (emphasis added). He found Dr. Koeneman's report was "not indicative of disabling symptoms or limitations," and Plaintiff's "providers have not documented significant ongoing deficits in his mental health functioning." Id. at 16. He noted

17

Plaintiff's treatment was conservative, consisting of medication management, therapy for a short time but not continuing through the relevant period, and no inpatient care or emergency room care for Plaintiff's PTSD. (R. 16). He found Plaintiff was "able to engage in numerous activities of daily living" and "he is more active than would be expected if all of his allegations were consistent with the record." Id.

### 3. Analysis

Plaintiff's argument that the ALJ downplayed the significant treatment he received "for over three years to stabilize his severe PTSD symptoms" (Pl. Br. 38) misapprehends the significance of the ALJ's reference to ongoing treatment or ongoing deficits. The significance is that the ALJ recognized the evidence includes records of treatment for several years before the alleged onset date of disability but the ongoing treatment after the alleged onset date was a lower level of conservative treatment. In fact, Plaintiff's argument tacitly acknowledges that his PTSD was stabilized during the relevant period here. Moreover, Plaintiff has not shown that the functional limitations apparently present early in his treatment continued after his alleged onset of disability.

Plaintiff's argument regarding the ALJ's characterization of his activities of daily living is no more fruitful. Although the ALJ noted that overall Plaintiff's description of his daily activities was essentially normal, he recognized that Plaintiff "may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the tasks." (R. 16). The ALJ found only that Plaintiff is "more active than would be expected if all of his allegations were consistent with the record."

Plaintiff has not shown record evidence that compels findings more restrictive than those found by the ALJ.

### C. Reliance on the Vocational Expert Testimony

Because Plaintiff has not shown error in the ALJ's evaluation of the medical opinions or of Plaintiff allegations of disabling symptoms, he cannot show error in the ALJ's reliance on vocational testimony in response to a hypothetical question based upon the functional limitations assessed.

The court finds no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 31, 2022, at Kansas City, Kansas.

s/ John W. Lunstrum
**John W. Lungstrum**
**United States District Judge**